**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **GENEVIEVE OLSON,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**LANI WILCONX, and PARK CITY SCHOOL DISTRICT,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-CV-793-DAK-JCB<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Jared C. Bennett |

This matter is before the court on Defendant Lani Wilcox's Partial Motion to Dismiss [ECF No 11] and Defendant Park City School District's ("PCSD") Motion to Dismiss [ECF No. 16]. On July 23, 2026, the court held a hearing on the motions. At the hearing, Plaintiff Genevieve Olson was represented by Nathan A. Duncan, Defendant Lani Wilcox was represented by Adam D. Wentz and Justin Anderson, and Defendant PCSD was represented by Joan M. Andrews and Vanessa Walsh. The court took the motions under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

On August 29, 2022, Plaintiff Genevieve Olson was a student at Park City High School and a member of the girls' tennis team. Defendant Lani Wilcox was the tennis team's coach. Sometime after Olson arrived at practice that day, Wilcox informed her that she would be playing singles on the junior varsity team instead of on a doubles varsity team. Olson became upset, went to the restroom, and called her mother. Nobody on the team came to check on her. When Olson returned

to practice, Wilcox allegedly berated her and threatened to kick her off the team. Olson slapped Wilcox, and Wilcox restrained Olson around the neck, restricting Olson's ability to breath and causing her physical pain, bruising and emotional trauma. When Olson escaped and indicated that she would call the police, Wilcox took Olson's telephone and walked away with it.

As a result of the incident, Olson alleges that in addition to the physical injuries, she suffered psychological injuries, including post-traumatic stress disorder, anxiety, depression, and emotional distress. Olson claims that she was ostracized at school, prevented from participating in tennis at school, and lived in fear of retribution from teachers, coaches, school administrators, and members of the public.

Olson brought the present lawsuit against Wilcox and Park City School District, alleging eight causes of action. Olson brings claims against Wilcox for assault, battery, negligence, intentional infliction of emotional distress, negligent infliction of emotion distress, and civil rights violations under 42 U.S.C. § 1983 for depriving her of rights secured by the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments. Olson also brings a claim against Park City School District for violation of her civil rights under § 1983.

Olson alleges that PCSD also failed to promulgate adequate policies, practices, and procedures to prevent the incident between Wilcox and Olson. Olson claims that PCSD's practices with respect to ignoring or downplaying misconduct by coaches, teachers, and other employees and agents were so common and well-settled as to constitute a custom or official policy of PCSD. Despite Wilcox's conduct, Olson alleges that Park City School District did not discipline Wilcox or remove her as the girls' tennis coach. Olson alleges, on information and belief, that Wilcox had a history of altercations with students and parents, which was known or should have been known to Park City School District prior to and during Wilcox's employment with PCSD. Alternatively,

Olson alleges that Park City High School and PCSD failed to conduct an adequate investigation before hiring her and improperly retained her as an employee after learning of her history of altercations. Olson further alleges that Park City High School and PCSD ignored red flags about Wilcox's behavior and failed to provide adequate oversight of Wilcox.

PCSD contends that the court can take judicial notice of the criminal case against Wilcox in Utah state court. After the incident, Wilcox was charged with aggravated child abuse, a third degree felony, and interrupting the use of a communication device, a class B misdemeanor. Wilcox moved for a pretrial justification hearing to assert claims of self defense and defense of others. The state court held an evidentiary hearing and found that Wilcox made a prima facie case of defense of others. Because the State of Utah did not disprove her defense, the district court dismissed the charges against Wilcox.

The State appealed the district court's decision. On appeal, both parties agreed that Wilcox had made a prima facie defense of others claim and genuinely believed that Olson posed an imminent threat to others. But the Utah Supreme Court determined that Wilcox's belief was not objectively reasonable and, therefore, reversed the dismissal of charges and remanded for further proceedings. *State v. Wilcox*, 2025 UT 31. The factual background in the Utah Supreme Court's decision is far more expansive than the facts in Olson's Complaint in this case. The Utah Supreme Court stated that its factual background was based on the evidence presented at the district court's evidentiary hearing and the district court's findings about that evidence. But the court noted that the evidence could come in differently in a future trial. *Id.* ¶ 3 n.3.

## DISCUSSION

### <u>Defendant Wilcox's Partial Motion to Dismiss</u>

Wilcox moves the court to dismiss Olson's causes of action for negligence, negligent

infliction of emotional distress, and violation of her civil rights under 42 U.S.C. § 1983.

**1. Negligence-based Claims**

Wilcox argues that under the Utah Governmental Immunity Act ("UGIA"), she is immune from Olson's negligence and negligent infliction of emotional distress claims because Olson's alleged injuries arise out of, are in connection with, or resulted from a purported assault and battery. In *Mariani v. Utah Dept. of Public Safety*, 2024 UT 44, ¶ 24, 562 P.3d 697, the Utah Supreme Court used a three-part test for determining whether a governmental entity and its employees are immune from suit under the UGIA. First, the court must determine whether the activity undertaken by the governmental actor is a "government function" and is thus immunized from suit by the UGIA's general grant of immunity. *Id.* Second, if the activity is a governmental function, the court must determine if "some other section of the [UGIA] waived the blanket immunity." *Id.* Finally, if the blanket immunity has been waived," the court must determine whether the UGIA contains "an exception to that waiver," resulting "in a retention of immunity against the particular claim asserted." *Id.* ¶ 18.

Wilcox argues the first prong is satisfied because she was performing a governmental function as a teacher and tennis coach at a public high school. The UGIA broadly defines "government function" as "each activity, undertaking, or operation of a governmental entity," including those "performed by a department, agency, employee, agent, or officer of a governmental entity." Utah Code Ann. § 63G-7-102. Utah courts have deemed "the operation of a public school [to be] a governmental function." *Ledfors v. Emery Cnty. Sch. Dist.*, 849 P.2d 1162, 1165 (Utah 1993), *holding modified by Mariani*, 2024 UT 44.

Olson does not contest that operating a public school and fielding a tennis team are governmental functions. She disputes, however, whether Wilcox's conduct was committed within

the scope of her employment. An employee's acts fall within the course and scope of employment if (1) the employee's "conduct is of the general kind" the employee "is employed to perform" and (2) the employee's "acts were motivated, at least in part, by the purpose of serving the employer's interest." *M.J. v. Wisan*, 2016 UT 13, ¶¶ 54-55, 371 P.3d 21; *Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1057 (Utah 1989). "[A]cts falling within the scope of employment are those acts which are so closely connected with what the [employee] is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment." *Christensen v. Swenson*, 874 P.2d 125, 127 (Utah 1994). This is the case "even if the employee was misguided in that respect." *Hodges v. Gibson Products Co.*, 811 P.2d 151m 156 (Utah 1991).

In *Crisman v. Hallows*, 2000 UT App 104, 999 P.2d 1249, a Utah Division of Wildlife Resources employee shot his neighbor's two dogs. *Id.* at ¶ 3-4. The employee worked at a fish hatchery. *Id.* ¶ 4. He admitted that he shot the dogs because they had disturbed his personal garden and horses but also claimed that another neighbor reported to him that the dogs were chasing an elk herd near the fish hatchery. *Id.* at ¶ 4-5. The Utah Court of Appeals reversed the district court's grant of summary judgment in favor of the employee and stated that the applicability of the UGIA "turns on what in fact occurred, not on what a defendant asserts occurred." *Id.* at ¶ 10. "Thus, while failure to comply with the Immunity Act applies to claims for conduct by governmental employees actually occurring in that capacity, it is not invoked for the personal tortious conduct of a person who happens to also be a governmental employee merely because he so asserts." *Id.* Whether an employee's conduct falls within the scope of employment is ordinarily a question of fact to be determined by the trier of fact. *Id.* at ¶ 11.

Relying on *Crisman*, Olson claims that there may be a question of fact as to whether

Wilcox was acting within the scope of her employment. But *Crisman* is distinguishable from the instant case. In Crisman, the DWR employee was alleged to have clearly personal motivations regarding the dogs disturbing his garden and horses, which had no relationship with his employment at a fish hatchery. In this case, coaching athletes, giving them feedback, determining who plays in what games, and dealing with the fallout from those decisions are all part of being a coach. The incident in question occurred during a team practice and involved a dispute about Wilcox's decision to have Olson play in a junior varsity match instead of a varsity match. It occurred after Olson had come out of the restroom and returned to practice. The rest of the tennis team was present onsite. Although Wilcox's methods for carrying out her objectives may have been regarded as "quite improper ones" in Olson's estimation, they were acts that were closely connected to and reasonably incidental to what she was employed to do as a coach. Even if misguided, Wilcox was acting in her capacity as tennis coach in response to a student athlete who slapped her during a team practice. Olson's purported injuries arise out of, or in connection with, or resulting from a purported assault or battery.

There is no allegation in the Complaint suggesting that Olson and Wilcox had a personal relationship outside the player/coach relationship. Olson states that she sued Wilcox in her individual capacity, but she does not allege that Wilcox had any personal motivations for engaging in the conduct. The interaction happened during a team practice and as a result of a determination Wilcox made as the team's coach. Wilcox may have overzealously restrained a player who slapped her, but that does not take the conduct outside her scope of employment. The conduct alleged in the Complaint is within Wilcox's scope of employment. As a coach, Wilcox was performing her assigned duties, teaching tennis, and supervising students on the team. Therefore, Wilcox was engaged in the performance of her governmental function when the incident occurred and meets

the first step of the UGIA analysis.

Under the second prong, the UGIA waives immunity "subject to Subsections 63G-7-101(4) and 63G-7-201(4), as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." Utah Code Ann. § 63G-7-301. Section 63G-4-201(4)(b) provides that a "governmental entity . . . and its employees are immune from suit, and immunity is not waived, for any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment if the injury arises out of or in connection with, or results from: . . . (b) . . . assault, battery, . . . or violation of civil rights." *Id.* § 63G-7-201(4)(b).

Utah courts have repeatedly held that the UGIA, "by its plain language preserves immunity for negligence that resulted in an injury that arises out of . . . an assault or battery." *Petersen v. Bd. of Educ. Of Davis Cnty Sch. Dist.*, 855 P.2d 241, 243 (Utah 1993); *Ledfors v. Emery Cnty. Sch. Dist.*, 849 P.2d 1162, 1165 (Utah 1993) (UGIA "plainly does not allow suit against a governmental entity if the underlying injury . . . arises out of an assault or battery."). The court has "previously held in several cases that immunity is retained under the [UGIA] if an assault or battery is involved, regardless of who the tortfeasor is, and even if the assault or battery occurs as the result of the negligence of the state or state agent." *Sanders v. Leavitt*, 2001 UT 78, ¶ 29, 37 P.3d 1052.

The Utah Supreme Court has concluded that a battery is committed if: (1) the actor deliberately makes a physical contact and (2) this contact is deemed harmful or offensive at law. *Wagner v. State*, 2005 UT 54, ¶ 19, 122 P.3d 599. Olson's Complaint alleges that Wilcox deliberately made physical contact with Olson and that contact was harmful or offensive. Olson's negligence-based causes of action expressly allege injury proximately caused by Wilcox's purported negligence during a team practice in her role as tennis coach. Governmental immunity is

waived for allegations of negligence committed within the course and scope of employment. The assault and battery exceptions to the UGIAs' waivers of immunity are applicable here.

Although Olson claims that she is entitled to plead alternative causes of action for negligence, she has alleged facts for assault and battery. She can pursue alternative and conflicting legal theories, but she cannot plead alternative facts. Utah courts have "rejected claims that have reflected attempts to evade" the statutory grant of immunity by "recharacterization of the supposed cause of the injury." *Peterson*, 855 P.2d at 242. Similarly, here, Olson's negligence-based claims are barred under the UGIA. She has separate causes of action for assault, battery, and intentional infliction of emotional distress. Those claims are not impacted by the UGIA. However, her negligence claims for the same alleged conduct are barred.

The last prong of the governmental immunity test looks to the exceptions to the waiver of UGIA immunity. While Olson asserts that her negligence-based claims do not arise out of a battery in the traditional sense, the issue is not whether the negligence-based claims arise out of the battery, rather the statutory retention of immunity hinges on whether Olson's injuries arise out of the battery. This is a significant distinction. Any injuries Olson may allege were caused by Wilcox's alleged negligence, even negligent acts or omissions beyond the alleged chokehold, still tie back to the underlying alleged battery. Even accepting that Wilcox owed Olson the duties she lists in her opposition, any injury Olson suffered from the breach of those duties would have occurred in connection with the purported battery. Olson states that Wilcox's negligence and NIED claims tie back to the purported battery because they arise out of the breach of care owed by a coach to a student when choosing a high-risk restraint technique in a nonemergency situation. No matter how Olson frames her argument, the injuries for each of Olson's claims arise out of or in connection to the allegedly deliberate physical conduct that harmed Olson. All of those

negligence-based claims are, therefore, entitled to immunity under the assault/battery exception. Accordingly, the court grants Wilcox's motion to dismiss Olson's negligence-based claims.

**2. Section 1983 Claim**

Wilcox moves to dismiss Olson's claims for violation of her civil rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments because they fail to comply with Federal Rule of Civil Procedure 8(a)(2) and, alternatively, Wilcox is entitled to qualified immunity. In her opposition, Olson agreed that she has not stated claims for violations of her Fifth, Sixth, Eighth, and Ninth Amendment rights. Therefore, the court considers those claims dismissed and will only addressing her claims for violations of her First, Fourth, and Fourteenth Amendment rights.

**A. FRCP 8(a)(2)**

Wilcox argues that Olson's § 1983 claim should be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a)(2). Olson does not clearly state which facts support which claims. *See Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989) (upholding trial court's refusal "to attempt to match the factual assertions with the elements of all subsections of the RICO statute to determine if the complaint states a claim for relief."). Olson argues that she does not need to assign facts to specific constitutional violations. Rule 8 does not require that. Olson argues that she has satisfied Rule 8 because her Complaint contains a simple, concise account of events that she alleges entitle her to damages for a variety of constitutional violations. Olson argues that she has pled sufficient facts to allow the court to reasonably infer that Wilcox is liable for the misconduct alleged.

Olson's Section 1983 claims fall short of Rule 8's requirements because she fails to put Wilcox on fair notice of the claims made against her. Olson's Complaint makes sweeping claims

alleging neglect, abuse, and inhumane treatment along with a list of seven (now pared down to three) constitutional amendments allegedly violated. But the Complaint does not state which facts support which claims. The Tenth Circuit affirmed a trial court's dismissal where "the trial judge described [this] method of pleading as 'shotgun' pleading and stated that he was not going to do [the plaintiff's] work for them to connect assertions with elements of all sections of the . . . law . . . . Neither will I require the defendants to 'piece' together the plaintiff's complaint." *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371-72 (10th Cir. 1989).

In this case, Olson's Complaint must identify the facts supporting each constitutional violation. Olson cannot merely tie the conduct and the alleged constitutional violation together in opposition to Wilcox's motion. Her Complaint must plausibly state facts supporting each claimed violation in order to state a claim and withstand dismissal on qualified immunity grounds. Accordingly, the court dismisses Olson's § 1983 claims against Wilcox without prejudice. Olson shall file an Amended Complaint complying with these requirements within thirty days of the date of this Order.

**Park City School District's Motion to Dismiss**

PCSD moves to dismiss Olson's only claim asserted against it, a civil rights claim under 42 U.S.C. § 1983. PCSD argues that Olson's § 1983 claim fails to comply with FRCP Rule 8(a)(2). PCSD also argues that Olson has failed to sufficiently allege a custom or policy of PCSD that would result in § 1983 liability. As with Wilcox's motion, to the extent that Olson attempts to state First, Fourth, and Fourteenth Amendment violations, she has not stated what her specific rights were that were violated and matched those rights up to her factual assertions regarding the District's conduct. Therefore, to the extent that Olson is attempting to state claims against PCSD under the First, Fourth, and Fourteenth Amendments, Plaintiff's Complaint fails to comply with

FRCP 8.

PCSD also argues that Olson's claim against it fails to plead details sufficient to satisfy the *Monell* standard for municipal/school district liability under Section 1983. In addition to the deficiencies under FRCP 8 highlighted by Wilcox's motion, PCSD contends that Olson's Section 1983 claim against it should be dismissed for failing to demonstrate that her rights were violated as a result of a school district custom or policy.

School districts are "liable only if the violation of a plaintiff's federal rights resulted from an action taken under an official custom or policy." *Douglas v. Beaver Cnty. Sch. Dist. Bd.*, 82 Fed. App'x 200, 202 (10th Cir. 2003). "The doctrine of *respondeat superior* cannot be employed to hold governmental entities liable under § 1983 for the constitutional torts of their employees." *See Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009).

Under the United States Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), there are four general categories of cases in which municipalities and other local government units may be liable for damages pursuant to a policy of custom that caused the plaintiff's injury. The applicable policy or custom may fall into one of five categories: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Duran v. Colbert*, 2023 WL 2742738, at *3 (D. Utah March 31, 2023) (quoting *Bryson v.*

*City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). Additionally, the plaintiff must demonstrate that by virtue of its deliberate conduct, the government entity was the moving force behind the injury alleged—in other words, there must be both the required degree of culpability and a direct causal link. *Id.*

In this case Olson alleges that PCSD engaged in practices with respect to ignoring or downplaying misconduct by PCSD coaches, teachers, and other employees and agents that were so common and well-settled as to constitute a PCSD custom or official policy. Thus, while Olson does not identify which theory she believes underpins her claim—which is problematic—she appears to base her 1983 claim solely on the second category of custom or policy addressed above. But in doing so, she fails to satisfy the required specificity of pleading necessary to state a claim adequately.

To adequately state a claim based on informal custom or practice, Olson must allege three elements: "(1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the municipality's employees; (2) deliberate indifference to or tacit approval of such misconduct by the municipality's policymaking officials after notice to the officials of that particular misconduct; and (3) that the plaintiff was injured by virtue of the unconstitutional acts pursuant to the custom and that the custom was the moving force behind the unconstitutional acts." *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993). To establish the existence of a continuing persistent and widespread custom, Olson must allege facts supporting the conclusion that similarly situated individuals were mistreated by the municipality in a similar fashion. *Carney v. City & Cnty of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

The claim in this case arises from Olson's alleged injuries due to Wilcox's allegedly inappropriate use of physical restraint. It is undisputed that Olson struck Wilcox first, thereby

initiating the physical interaction between the parties. Olson may not validly extrapolate a custom or practice of widespread violations of students' constitutional rights from a single incident of allegedly inappropriate self-defense by one coach. It should be noted that at the time of the incident in 2022, applicable Utah law provided that a school employee was permitted to use reasonable and necessary physical restraint "in self-defense" or "when otherwise appropriate to the circumstances" to, among other things, "protect a student or another individual from physical injury" or to "remove from a situation as student who is violent." Utah Code Ann. § 53G-8-302 (repealed May 7, 2025). In attempting to demonstrate a custom, policy, or practice of PCSD, Olson must demonstrate not just a pattern of use of physical restraint by coaches and teachers, but a pattern of the use of physical restraint in a manner that was outside of that which was expressly allowed by law as well as the District's knowledge of such practices and indifference to or tacit approval of that kind of conduct.

Clear Tenth Circuit authority provides that a pleading must factually distinguish true municipal liability claims from those based on *respondeat superior*. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009); *Duran v. Colbert*, No. 2:16-CV-805-CW, 2023 WL 2742738, *2 (D. Utah 2023) (unpublished). Olson's Complaint is required to establish that her claims against PCSD are plausible. Olson must identify the unconstitutional policy or custom that is the basis of PCSD's alleged liability. *Castro v. Utah Cnty.*, No. 2:22-CV-464-JCB, 2024 WL 452940 (D. Utah 2024). Olson has not identified any other incident in which a student was physically restrained after committing a battery. Olson's failure to cite to a single other incident of a student being mistreated in an allegedly similar fashion warrants dismissal of her claim as it did in <u>Duran and the cases it relied on</u>. *Duran*, 2023 WL 274738 at *5; *Huff v. City of Aurora*, No. 21-CV-2715-RMR-NRN, 2022 WL 4131438, at *11 (D. Colo. Sept. 12, 2022) (dismissing custom

and practice claim where complaint alleged four instances but court found only one instance of similar mistreatment insufficient to allege a plausible widespread practice); *Waller v. City and Cnty. of Denver*, 932 F.3d 1277 (10th Cir. 2019) (affirming dismissal where allegations described one similar incident). Just as in those cases, Olson advances only conclusory allegations regarding any incidences similar to the one at issue.

Similarly, several of Olson's allegations against PCSD are based on information and belief. On information and belief, PCSD allegedly hired and retained Wilcox with knowledge of an alleged history of altercations with students and parents. Olson also alleges that PCSD failed to investigate and/or discipline Wilcox for incidents in which she had altercations with students and parents during her employment at PCSD. But Olson does not provide any factual context supporting these assertions. The *Twombly* plausibility standard does not prevent a plaintiff from pleading facts upon information and belief as long as the complaint sets forth the factual basis of the belief. But Olson has not provided the facts supporting her assertions. Where a civil rights complaint contains only bare assertions, dismissal is fitting. *Duran*, 2023 WL 2742738 at *1.

In *Waller*, the Tenth Circuit explained that claims of inadequate hiring, training, or other supervisory practices must met a high initial pleading bar and that claims of alleged supervisory shortcomings must meet the "stringent 'deliberate indifference' standard of fault." To allow a less stringent standard "would result in *de facto respondeat superior* liability on municipalities." 932 F.3d at 1284. The *Waller* court then analyzed theories of liability including inadequacies in hiring practices, failure to train, failure to supervise, failure to investigate, and failure to discipline. Ultimately, the court upheld the trial court's dismissal on all the theories of liability because they were insufficiently pled. *See id.*

As to hiring, the *Waller* court stated: "the fact that inadequate scrutiny of an applicant's

background would make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Id.* at 1285. Rather, "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* The vague allegations in Olson's Complaint, as currently pled, do not meet this criteria.

As to a failure to train theory of liability, the *Waller* court stated: "We are mindful of the Supreme Court's warning that 'a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* In *Swearingen v. Pleasanton Unified Sch. Dist. 344*, 2021 WL 5758544 (D. Kan. 2021), the district court dismissed a failure to train claim for falling short of the Tenth Circuit's requirements for a plausible claim where the plaintiff referred to "just one earlier incident with the school district" in which a male teacher was caught sexually soliciting a student through text messaging because "one instance, however egregious, does not a pattern or practice make").

The *Waller* decision admonished that Rule 12(b)(6) does not allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence discovery on the off chance that "[s]ome facts might exist which could support a plausible claim." *Id.* at 1291. Olson's Complaint alleges vague accusations without any supporting facts. Olson alleges that the existence of other incidents in which PCSD allegedly ignored or downplayed misconduct by PCSD employees "is implicit." This is insufficient to satisfy the requirement that her Complaint plausibly allege "a direct causal link" between the violation of her constitutional rights and PCSD's conduct. *See*

*Archuleta v. Board of Ed. For Espanola Pub. Schs.*, Civ. No. 24-359 KK/JHR, 2025 WL 1068054, *8-9 (D.N.M. 2025), (dismissing municipal liability claims against school district based on inadequate hiring practices, failure to train and supervise, and alleged retaliation by members of school's coaching staff).

As to the ratification claim, Olson's opposition does nothing more than attempt to recast the other alleged claims of inadequate hiring, training, or other supervisory practices into a ratification claim. The Tenth Circuit's decision in *Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) does not support Olson's position. In *Moss*, the Tenth Circuit upheld the trial court's dismissal of a ratification claim at the motion to dismiss stage. Olson has not alleged who within PCSD has policymaking authority, what actions such individual did to ratify a policy related to Wilcox's actions, and what decisions were made by any particular subordinate such that a policy making supervisor would have been aware of it and capable of ratifying it.

Citing to *Moss*, the district court in *Estate of Kracht v. City of Sterling*, Civ. No. 22-CV-1081-NYW_STV, 2022 WL 16650152, *4-5 (D. Colo. 2022), rejected a claim that the failure to terminate or discipline a police officer for excessive force was reflective of ratification where the complaint failed to allege with any specific details that anyone in general or anyone with policymaking authority affirmatively approved of the officer's actions. *Id.* at *4. Olson's ratification claim, in this case, is similarly deficient.

Similarly, while Olson uses the words deliberate indifference to describe PCSD's conduct, the statement lacks any specific factual allegations supporting the claim or demonstrating the level of culpability of PCSD as a whole. In response to PCSD's arguments regarding Olson's failure to plead deliberate indifference, Olson relies on *Velarde v. Board of Cnty. Comm'rs of the Cnty. of Taos*, 756 F. Supp. 3d 1216 (D.N.M. 2024). *Velarde*, however, is not applicable and clearly

distinguishable. Unlike in *Velarde*, Olson's Complaint makes no allegation that Wilcox had been known to engage in physical restraint, that any of the alleged "prior altercations" were physical in nature, that there were grievances or complaints filed with PCSD pursuant to its complaint policies, or that there were other instances in which PCSD has been sued or paid out settlements based on similar conduct to that allegedly committed by Wilcox. Olson's allegations do not meet the pleading requirements necessary for stating a deliberate indifference claim. Olson's allegations are too vague to withstand dismissal.

In addition, Olson has not sufficiently pled the existence of a direct causal link. The causation element is applied with special rigor "when the municipal liability claim is based on inadequate training, supervision, and deficiencies in hiring." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Olson's Complaint fails to make a sufficient connection between PCSD's alleged policies and how those directly caused the alleged violation of Olson's constitutional rights.

Accordingly, the court grants PCSD's motion to dismiss Olson's § 1983 claim against it. Because the dismissal is based on a failure to adequately plead the causes of action, the court dismisses the claim without prejudice. Olson shall file an Amended Complaint within thirty days of the date of this Order.

## CONCLUSION

Based on the above reasoning, Defendant Lani Wilcox's Partial Motion to Dismiss [ECF No 11] is GRANTED. Olson's negligence-based claims are dismissed with prejudice and her § 1983 claim is dismissed without prejudice. Defendant Park City School District's Motion to Dismiss [ECF No. 16] is GRANTED. Olson's § 1983 claim against Park City School District is dismissed without prejudice. Within thirty days of the date of this Order, Olson shall file an

Amended Complaint asserting her § 1983 claims against Defendants in accordance with FRCP 8 and the law discussed above.

DATED this 14th day of September 2026.

BY THE COURT:

DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE